UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **FRANCES PARKER** | **CIVIL ACTION NO. 09-1859** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **JOHN DUFRESNE, ET AL** | **MAG. JUDGE MARK HORNSBY** |

### RULING

Pending before the Court are a Motion for Summary Judgment [Doc. No. 46] filed by Defendant John Dufresne ("Dufresne") and a Cross Motion for Partial Summary Judgment [Doc. No. 50] filed by Plaintiff Frances Parker ("Parker"). For the following reasons, Dufresne's motion is GRANTED, and Parker's motion is DENIED.

**I.    FACTUAL AND PROCEDURAL HISTORY**

This case arises out of the alleged copying of a manuscript detailing the murders of Brenda Spicer ("Spicer") and Joel Tillis ("Tillis") by Irvin Bolden, Jr. ("Bolden"). The background of the murders was described by the Louisiana Supreme Court in 1994:

> On March 20, 1987, defendant [Bolden] was indicted for second degree murder of Brenda Lee Spicer. At trial, the state sought to show that defendant murdered her because he was jealous of the close relationship between Spicer and defendant's girlfriend, Joel Tillis. Defendant testified on his own behalf and specifically denied killing Spicer . . . . At the conclusion of trial, the jury returned a verdict of 'not guilty.'
>
> Subsequently, defendant and Tillis moved to Memphis, Tennessee. In 1990, Tillis disappeared, and her body was later found in Arkansas. Defendant was a suspect in her disappearance, but was never arrested and later moved to New Jersey. Approximately two years later, defendant filed a complaint against a woman named Jennifer Spurlock and was summoned to the Burlington County Prosecutor's Office in New Jersey in connection with the complaint. In the course of questioning, defendant confessed to the killing of Joel Tillis [and Spicer].

*State v. Bolden*, 639 So.2d 721, 722 (La. 1994).

Some time in the early 1990s, Parker wrote a 743-page manuscript ("the manuscript") about the murders.[1] In 1993, Parker registered the manuscript with the United States Copyright Office. The manuscript is a "docu-drama style" novel incorporating original fictional dialogue and descriptions as well as factual material related to the murder.

In 2000, Parker approached Dufresne about her manuscript. Parker and Dufresne allegedly entered into an agreement regarding Dufresne's role in writing a screenplay based on the manuscript.

Parker alleges that, in 2005, Dufresne published an unauthorized 9-page short story titled "Based on a True Story" ("the short story") that was substantially similar to the manuscript and dedicated it to Parker in a 245-page anthology called "Johnny Too Bad." Dufresne used the fictional names Miss Doe, Laquiesha, and Curtis for Spicer, Tillis, and Bolden respectively. At issue are 38 passages, each consisting of one or two sentences.[2] *See* [Doc. No. 46-8, pp. 4-8]. The Court has attached those passages to this Ruling. While Parker alleges that 38 passages from the short story infringe her copyright in the manuscript, the parties specifically address and analyze only 13 of those passages. Regardless, the Court has considered all 38 passages from the short story and the manuscript and has reviewed the short story and the manuscript in their entirety.

On October 30, 2009, Parker filed suit against Dufresne, John Philbin ("Philbin"), John

---

[1]Parker gave various titles to the manuscript including "The Lady Indian Basketball Murders," "Twisted Loves," and "Basketball Murders." Parker published the manuscript in 2009 and titled it "Deadly Triangle."

[2]Originally, Parker alleged that 39 passages from the short story infringed her copyright in the manuscript. However, Parker concedes that one of the passages is purely factual and is not protected by copyright. [Doc. No. 50-1 ("Ms. Parker acknowledges that the custodian discovering Ms. Spicer's body is a fact as to which copyright does not apply.")].

2

Otterbacher, and Grand Valley State University alleging claims based on copyright infringement, breach of contract, and tort theories. The Court subsequently dismissed all claims against Defendants except for a copyright infringement claim against Dufresne related to the publishing of the short story. Parker alleges that Dufresne infringed her copyright by copying fictional material and by his selection and arrangement of facts in the manuscript.

On December 13, 2010, Dufresne filed a Motion for Summary Judgment. [Doc. No. 46]. On January 3, 2011, Parker filed a Cross Motion for Partial Summary Judgment. [Doc. No. 50]. The parties filed responses and replies to both motions. [Doc. Nos. 50, 54, 56, & 57].

After the parties filed motions for summary judgment, the Court granted Parker leave to amend her Complaint to add intentional infliction of emotional distress and false-light invasion of privacy claims against Philbin and unfair trade practices and unjust enrichment claims against Dufresne related to the publishing of the short story. The parties do not seek summary judgment on these claims.

A bench trial in this matter is set for June 14, 2011.

**II.    LAW AND ANALYSIS**

    **A.    Summary Judgment Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.

3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

"If [a] decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved." *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-24 (5th Cir. 1978). "Thus, where . . . the evidentiary facts are not disputed, a court in a non-jury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions." *Id*. at 1124.

  **B.**  **Copyright Infringement**

Parker and Dufresne both seek summary judgment on the issue of whether the short story infringes Parker's copyright in the manuscript. While it is undisputed that Parker owns a copyright in the manuscript, the parties dispute whether Dufresne copied constituent elements of the manuscript that are original, including the manuscript's "(1) fictional material and (2) the selection

or arrangement of factual matters." [Doc. No. 50-1, p. 7].

Section 102 of the Copyright Act provides that:

(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced or otherwise communicated . . . . Works of authorship include the following categories:

(1) literary works . . . .

(b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102. A copyright owner "has the exclusive rights to . . . prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106. A "'derivative work' is a work based upon one or more preexisting works, such as a[n] . . . abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. "To constitute a derivative work, the infringing work must incorporate in some form a portion of the copyrighted work." *Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255, 267 (5th Cir. 1988).

"To establish a claim for copyright infringement, a plaintiff must prove that: (1) he owns a valid copyright and (2) the defendant copied constituent elements of plaintiff's work that are original." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (internal quotation marks and citations omitted).

As to the second element of a claim for copyright infringement, "[t]wo separate inquiries must be made." *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003). "The first question is whether the alleged infringer copied, or actually used the copyrighted material in his own work." *Id.* (internal quotation marks and citation omitted). "Circumstantial evidence may support

an inference of copying if the defendant had access to the copyrighted work and there is 'probative similarity' between the copyrighted work and the allegedly infringing work." *Id*. (citation omitted).

"The second question is whether 'substantial similarity' exists between the copyrighted work and the allegedly infringing work."[3] *Id*. (citation omitted). "To answer this question, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as substantially similar." *Id*. (internal quotation marks and citation omitted). "[I]n making this factual determination, a layman must detect piracy without any aid or suggestion or critical analysis by others. The reaction of the public to the matter should be spontaneous and immediate." *Peel & Co., Inc. v. The Rug Mkt.*, 238 F.3d 391, 398 (5th Cir. 2001) (internal quotation marks and citation omitted). "[S]ubstantial similarity may be measured by comparing the [works] as a whole, but the more exact a duplication of constituent pieces of a work the less overall similarity that may be required." *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 46 F.3d 408, 410 (5th Cir. 1995) (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 548 (1985) (300 words copied word-for-word from a 450-page book constituted infringement)). "To establish that an infringement is quantitatively *de minimis* and therefore not actionable, the alleged infringer must demonstrate that the copying of the protected material is so trivial 'as to fall below the quantitative

---

[3] "'Probative similarity' and 'substantial similarity' are analytically distinct inquiries." *Bridgmon*, 325 F.3d at 576 n.7 (citation omitted). *See also Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74-75 (2d Cir. 1997) ("[T]he concept of 'substantial similarity' itself has unfortunately been used to mean two different things. On the one hand, it has been used as the threshold to determine the degree of similarity that suffices, once access has been shown, as indirect proof of copying; on the other hand, 'substantial similarity' is more properly used, after the fact of copying has been established, as the threshold for determining that the degree of similarity suffices to demonstrate actionable infringement. Professor Latman helpfully suggested that when 'substantial similarity' is used to mean the threshold for copying as a factual matter, the better term is 'probative similarity,' and that 'substantial similarity' should mean only the threshold for actionable copying.").

threshold of substantial similarity.'" *Straus v. DVC Worldwide, Inc.*, 484 F.Supp.2d 620, 639 (S.D. Tex. 2007) (quoting *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998)); *Ringgold*, 126 F.3d at 75 (noting that copying must be both quantitatively and qualitatively sufficient to support actionable copying).

As to the first question, the Court finds no genuine issue of material fact that Dufresne copied or used material from the manuscript in his short story. The parties do not dispute that Dufresne had access to the manuscript prior to writing the short story, and Dufresne admits that he was "inspired" by the manuscript. There are also numerous probative similarities between the short story and the manuscript that no reasonable fact-finder would attribute to chance. For example, both works mention Oprah, Elvis Presley's Graceland estate, and crumb-carrying ants.

As to the second question[4], the Court finds that the short story and the manuscript are not substantially similar.[5]

---

[4]
> At first glance, it might seem odd to pursue an inquiry as to 'substantial similarity' even after copying as a factual matter has been established. However, the superficial anomaly reflects only a lack of appreciation of the difference between factual copying and actionable copying. The former (probative similarity) requires only the fact that the infringing work copies something from the copyrighted work; the latter (substantial similarity) requires that the copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred. The qualitative component concerns the copying of expression, rather than ideas, a distinction that often turns on the level of abstraction at which the works are compared. The quantitative component generally concerns the amount of the copyrighted work that is copied, a consideration that is especially pertinent to exact copying.

*Ringgold*, 126 F.3d at 75 (citations omitted).

[5]As noted previously, in a nonjury context, the judge has wider authority to enter summary judgment because the judge is the ultimate trier of fact. *See In re Placid Oil Co.*, 932

Parker cites examples of fictional material in the short story that she alleges are substantially similar to the manuscript. On page 35 of the short story, Dufresne wrote that Laquiesha is an "Oprah wannabe;" that "no trashy white girl was going to ruin [Curtis'] life;" that "[Curtis] sat [Miss Doe's] naked body in the passenger seat of his Chevette, secured it with the lap and shoulder belts, and drove back to school;" and that, while Miss Doe's dead body was in the passenger seat, "[Curtis] lowered the volume so he could talk without shouting" because "[h]e felt he needed to explain himself, tell her why he'd done what he'd done." [Doc. No. 46-7]. In comparison, on pages 64, 67 and 612 of the manuscript, Parker wrote that "[o]ne of [Tillis'] dreams was to meet Oprah Winfrey; if she could only meet her, Oprah would let her be co-host;" that a dumpster was "the appropriate place for white trash;" that "[Bolden] propped [Spicer] in the front seat" of Tillis' Chevette; and that Bolden "convers[ed] with [Spicer] gleefully" in the car. [Doc. Nos. 46-3 & 46-6]. The Court is not persuaded that these examples show that the short story is substantially similar to the manuscript. The only similarities between these passages are the word "Oprah," that Spicer (Miss Doe) was trashy and white, that Bolden (Curtis) placed Spicer (Miss Doe) in the front seat of a car, and that Bolden (Curtis) spoke to Spicer's (Miss Doe's) dead body while driving in the car. There are countless other words and phrases in the short story that are not in the manuscript and vice versa.

Parker cites other examples of fictional material in the short story that are allegedly substantially similar to the manuscript. On pages 36, 37, and 39 of the short story, Dufresne wrote

---

F.2d 394, 398 (5th Cir. 1991) (citing *Nunez*, 572 F.2d at 1124). The judge may weigh the evidence and draw inferences at the summary judgment stage unless those inferences involve issues of witness credibility or disputed material fact. *Id*. ("[W]here the evidentiary facts are not disputed, a court in a nonjury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions."). There are no issues involving witness credibility or disputed material facts related to whether the short story is substantially similar to the manuscript.

that the custodian exclaimed "Sweet Mother of Jesus!" upon finding Miss Doe in the dumpster; that Miss Doe's "blue eyes [were] opened, blood ha[d] dried around her mouth and nose, [and] sugar ants [were] carry[ing] crumbs up her leg;" that Curtis' "charming, gifted, and handsome attorney [was] struck by lightning and killed. (Truth is stranger than fiction.);" and that "Curtis and Laquiesha move[d] to Memphis (He works as a security guard at Graceland, but you wouldn't believe that.)." [Doc. No. 46-7]. In comparison, on pages 1, 2, 304, 527, and 528 of the manuscript, Parker wrote that the custodian whispered "Sweet Jesus" upon finding Spicer in the dumpster; that Spicer's "eyes [were] starin at nothin," that "blood [was] draining out her nose [and] ants [were] carrying food crumbs down her leg;" that Bolden's attorney was killed by a lightning strike which was "a twist usually found only in fiction;" and that Bolden's "job assignment to guard Graceland . . . seemed as predictable as blood in a Stephen King Novel." [Doc. Nos. 46-3, 46-4, & 46-5].

The term "Sweet Jesus" is an exclamation that is used when someone is surprised. Such expressions are generally not subject to copyright protection. *See Alexander v. Haley*, 460 F.Supp. 40, 46 (S.D.N.Y. 1978) (citing *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1939); *Richards v. Columbia Broad. Sys., Inc.*, 161 F.Supp. 516, 518 (D.D.C. 1958)); *Peel & Co., Inc.*, 238 F.3d at 398 ("[N]ot all copying is legally actionable."). Even assuming the phrase is subject to copyright protection, the Court finds that the phrase does not cause the short story to be substantially similar to the manuscript. Additionally, both works use the word "fiction," but use the word to convey opposite ideas. The manuscript's use of the word fiction implies that fiction is stranger than truth, while the short story's use of the word fiction states the opposite. Both works also refer to Curtis' (Bolden's) employment at Graceland, but convey different ideas. Dufresne writes that Curtis' (Bolden's) employment as a security guard at Graceland is unbelievable, while

Parker writes that it is predictable. Finally, the although Dufresne's use of crumb-carrying ants in describing Miss Doe's body in the dumpster is similar to the manuscript, the Court is not persuaded and this makes the short story **substantially** similar to the manuscript. After considering the short story and the manuscript in their entireties, the Court finds that the fictional material in the short story is not substantially similar to the fictional material in the manuscript.

Parker also alleges that the short story is substantially similar to the manuscript in the short story's selection and arrangement of facts. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 349 (1991) ("Notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement."). Even assuming Parker owns a copyright in the selection and arrangement of facts in the manuscript,[6] the Court finds that the selection and arrangement of facts in the short story are not substantially similar to those in the manuscript. First, the manuscript contains many facts that are not in the short story, paraphrased or otherwise. Second, although the short story contains several of the same facts as the manuscript, the short story arranges them differently than the manuscript. For example, on page 2 of the short story, Dufresne wrote that Laquiesha's basketball team won a game the day Curtis murdered Miss Doe. [Doc. No. 46-7]. Dufresne then describes how a custodian discovered Miss Doe's body the next morning. *Id*. On page 70 of the manuscript, Parker also wrote that Tillis' basketball team won a

---

[6]In *Feist*, the Supreme Court noted that "copyright in a factual compilation is thin," and that "'[N]o matter how much original authorship the work displays, the facts and ideas it exposes are free for the taking . . . . [T]he very same facts and ideas may be divorced from the context imposed by the author, and restated or reshuffled by second comers, even if the author was the first to discover the facts or to propose the ideas.'" 499 U.S. at 349 (alteration in original) (quoting Ginsburg, *Creation and Commercial Value: Copyright Protection of Works of Information*, 90 COLUM. L. REV. 1865, 1868 (1990)).

game the day Bolden murdered Spicer. [Doc. No. 46-3]. However, Parker then described how Bolden, Tillis, and others interacted after the game. *Id*. After considering the short story and the manuscript in their entireties, the Court finds that the selection and arrangement of facts in the short story is not substantially similar to those in the manuscript.

Parker argues that this case is like *Harper*, where the Supreme Court found, among other things, that 300 words copied word-for-word from a 450-page book constituted copyright infringement. 471 U.S. at 565. The Court disagrees. In this case, unlike the infringer in *Harper*, Dufresne did not copy a portion of the manuscript word-for-word. Rather, Dufresne copied a few words and ideas from passages in the manuscript to create his own passages in the short story. Additionally, Dufresne's copying of the manuscript is quantitatively small and qualitatively unimportant. *See Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987) (citations omitted) ("Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity."). Therefore, this case is distinguishable from *Harper* and other cases Parker cites. [Doc. No. 50-1 (citing *Nehon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65 (2d Cir. 1999) (copying 20 articles out of 90,000 articles while "often employ[ing] identical phraseology and word choice" was not *de minimis*); *Meeropol v. Nizer*, 560 F.2d 1061, 1070-71 (2d Cir. 1977) (reprinting verbatim "less than one percent" of a book could constitute copyright infringement))].

Parker also argues that Dufresne paraphrased the manuscript and that "in copyright law paraphrasing is equivalent to outright copying." [Doc. No. 50-1, p. 7 (citing *Donald v. Zack Meyer's T.V. Sales and Serv.*, 426 F.2d 1027, 1030 (5th Cir. 1970); *Triangle Publ'ns Inc. v. Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171, 1179 (5th Cir. 1980) (Brown, J., concurring in part and dissenting

11

in part))]. However, many of the passages Dufresne paraphrased are based on facts, which are not copyrightable. Further, and as previously discussed, the passages Dufresne paraphrased that are based on fictional material were either quantitatively small and qualitatively unimportant or used in a way to convey different or even opposite meanings than those in the manuscript.

Because the Court finds the short story is not substantially similar to the manuscript, the Court need not decide whether Parker is estopped from alleging her claim for copyright infringement related to the publishing of the short story.

Dufresne's Motion for Summary Judgment is GRANTED, and Parker's Cross Motion for Partial Summary Judgment is DENIED.

### III. CONCLUSION

For the foregoing reasons, Dufresne's Motion for Summary Judgment [Doc. No. 46] is GRANTED, Parker's Cross Motion for Partial Summary Judgment [Doc. No. 50] is DENIED, and Parker's copyright infringement claim related to the publishing of the short story is DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 16th day of March, 2011.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE